UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

**CRIMINAL COMPLAINT**

vs.

Case No. 3:26-mj- 1190-MCR

CHRISTOPHER MICHAEL LAWHON

I, the undersigned complainant, being duly sworn, state the following is true and

correct to the best of my knowledge and belief.   On or about December 6, 2020, and

continuing through on or about May 7, 2026, in the Middle District of Florida, the

Northern District of Georgia, and elsewhere, the defendant,

> did employ, use, persuade, induce, entice, and coerce, and attempt to employ,
> use, persuade, induce, entice, and coerce a minor to engage in any sexually
> explicit conduct for the purpose of producing a visual depiction of such
> conduct, knowing and having reason to know that such visual depiction would
> be transported and transmitted using any means and facility of interstate and
> foreign commerce, and the visual depiction was produced using materials that
> had been mailed, shipped, and transported in and affecting interstate and
> foreign commerce by any means, and the visual depiction was actually
> transported using any means and facility of interstate and foreign commerce,

in violation of Title 18, United States Code, Section 2251(a) and (e).   I further state that I

am a Special Agent for Homeland Security Investigations, and that this Complaint is based

on the facts contained in the attached Affidavit.

JOE HESS, Complainant

Sworn and subscribed to before me on this _8th_ day of May, 2026, at Jacksonville, Florida,

MONTE C. RICHARDSON
United States Magistrate Judge

## AFFIDAVIT

I, Joe Hess, being duly sworn, hereby state as follows:

## I.    INTRODUCTION

### Identity of Affiant

1.    I am a Special Agent (SA) with Homeland Security Investigations (HSI), the investigative arm of Immigration and Customs Enforcement (ICE).  I have been assigned to the Office of the Assistant Special Agent in Charge, Jacksonville, Florida since October 2025.  Prior to that, I was a Special Agent with the United States Secret Service for approximately 21 years until my retirement in July 2023.  I have attended the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia, and the James J. Rowley Training Facility in Beltsville, Maryland.  I have a bachelor of arts degree in professional accountancy from the University of Southern Mississippi.  I am a law enforcement officer of the United States and am thus authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of violations of federal criminal law.  I am responsible for enforcing federal criminal statutes under the jurisdiction of HSI, including violations of law involving the exploitation of children.  In my capacity as a Special Agent, I have participated in investigations during which I have conducted or participated in physical surveillance, historical investigations, extradition cases and other complex investigations.  Since becoming an HSI Special Agent, I have worked with experienced Special Agents and state and local law enforcement officers who also investigate child exploitation offenses.

2.      I have participated in the investigation of criminal matters involving the sexual exploitation of children that constituted violations of 18 U.S.C. §§ 2251, 2252, 2252A, as well as Florida state statutes that criminalize sexual activity with minors and other methods of child sexual exploitation. During the course of my investigations, I have worked closely with members of the local child exploitation task force comprised of agents and officers from HSI, the Federal Bureau of Investigation (FBI), the Florida Department of Law Enforcement (FDLE), the Jacksonville Sheriff's Office (JSO), the Clay County Sheriff's Office (CCSO), and the Putnam County Sheriff's Office, among other agencies. These agencies routinely share information involving the characteristics of child sex offenders as well as investigative techniques and leads. As a federal agent, I am authorized to investigate and assist in the prosecution of violations of laws of the United States, and to execute search warrants and arrest warrants issued by federal and state courts.

### Requested Complaint

3.      This affidavit is being submitted for the limited purpose of establishing probable cause to issue a criminal complaint charging CHRISTOPHER MICHAEL LAWHON with a violation of 18 U.S.C. § 2251(a) and (e), that is, production and attempted production of child pornography.  Because this affidavit is submitted for this limited purpose, I have not included each and every fact known to me concerning

2

this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to issue the requested criminal complaint.

## Statutory Authority

4.      Based upon my training and experience, I know that 18 U.S.C § 2251(a) makes it a crime for a person to knowingly employ, use, persuade, induce, entice or coerce a minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, or to attempt to do the same, if such visual depiction was produced using materials that have been mailed, shipped and transported in and affecting interstate and foreign commerce.

## II.    PROBABLE CAUSE

5.      On May 7, 2026, I learned from U.S. Customs and Border Protection Officers (CBPOs) assigned to the Jacksonville Port Authority (JAXPORT) Cruise Terminal in Jacksonville that CHRISTOPHER MICHAEL LAWHON may be involved in child pornography offenses. A CBPO told me that LAWHON had been examined as he returned to the United States on the Carnival Elation cruise ship, pursuant to the officer's border search authority. I know from my investigation that the Elation had just returned to the United States after cruising in international waters.

6.      During the examination of LAWHON, the CBPOs learned LAWHON had one electronic device in his possession, an Apple iPhone 16 Pro Max. According to CBPO Lear, a manual review of LAWHON's Apple iPhone 16 Pro Max revealed multiple surreptitiously-recorded video files, at least one of which included a recording of a minor male child in a bathroom stall while the child was going to the bathroom.

3

The file was discovered in the photo library on the Apple iPhone 16 Pro Max. In addition, numerous other surreptitiously-recorded videos were discovered in the photo library.

7.     I, along with HSI Special Agent Joshua Weiland, responded to the JAXPORT Cruise Terminal and met with CBPO Lear and other CBPOs. Upon arrival, I received LAWHON's Apple iPhone 16 Pro Max from CBPO Lear and manually reviewed the device pursuant to the same border search authority and confirmed multiple surreptitiously-recorded video files were present on the phone, including the recording of a minor male child in a bathroom stall while the child was going to the bathroom.

8.     During my preliminary review of LAWHON's Apple iPhone 16 Pro Max, I observed a 34 second video, with sound, dated December 6, 2020, with a time stamp of 6:46 p.m. The video appears to be recorded in a bathroom stall. The view of the video is from above and over the adjacent stall. An adult male and a minor male child are urinating in a toilet. The minor child's pants appear to be at his ankles, and he is holding his exposed penis as he goes to the bathroom. The person recording the video zooms in on the child and his bare, exposed penis three times during the video. As soon as the child finishes and begins to pull his pants up, the person recording immediately appears to step back down and discontinues recording.

9.     At approximately 10:21 a.m., SA Weiland and I approached LAWHON for a possible interview. LAWHON agreed to speak with us in an interview room at the JAXPORT Cruise Terminal. The interview was audio recorded. LAWHON was

4

told he was free to leave, didn't have to speak with us, and could stop questioning anytime. During the interview, LAWHON provided the following information, among other things:

a.   LAWHON advised his phone is password protected and nobody else has access to it.

b.   When asked if he knew why he was speaking with law enforcement he stated "...maybe some photographs or something." When asked about the files on his camera roll, he advised there were a mixture of saved files among others.

c.   When asked to describe the files on his phone, LAWHON stated "voyeurism" and advised that is something he is into. When asked if he recorded anything, LAWHON stated, "yes, there are things on my phone that I've downloaded, that I've recorded myself, yes."

d.   He advised he last recorded someone without their consent about a week before the cruise. He advised he typically records people in a "bathroom situation" and admitted to doing so on multiple occasions.

e.   LAWHON admitted to viewing "materials" and further described viewing "this like teenage boy, maybe 15, 16 something like that" and described it as an incestual act. LAWHON described the boy as not having much body hair and not being a full-grown adult.

5

10.     The first part of the interview ended at approximately 11:14 a.m. The interview resumed at approximately 11:47 a.m. LAWHON provided verbal and written consent to search his phone and provided the password, and provided verbal and written consent to search his residence in Spartanburg, SC.  LAWHON was shown the video file described above and stated, "there's a child right there and he has his pants down and anytime a child has his pants down there's a problem, right?" When asked by SA Weiland why he appeared to be zooming in towards the child, LAWHON stated, "I didn't even know it was a, umm child at first. I feel like anything I tell you is just going to dig me a deeper grave."  LAWHON then asked, "Can we delete that now?"  LAWHON further advised that he knows he should have deleted that particular video. When asked if there would be any child pornography on his device, LAWHON stated "No. I hope not" and "I don't remember."  When further discussing the video he recorded on December 6, 2020, he admitted to recording it at Medieval Times in Lawrenceville, GA. He advised he remembered producing the video.

## III.   CONCLUSION

11.     Based on the foregoing, I have probable cause to believe that on or about December 6, 2020, and continuing through on or about May 7, 2026, in the Middle District of Florida, the Northern District of Georgia, and elsewhere, LAWHON committed a violation of 18 U.S.C. § 2251(a) and (e), specifically, that LAWHON, did employ, use, persuade, induce, entice and coerce a minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct,

6

and attempt to do the same, and the visual depiction was produced using materials that have been mailed, shipped and transported in and affecting interstate and foreign commerce, in violation of 18 U.S.C. § 2251(a). Accordingly, I respectfully request a criminal complaint be issued by this Court charging LAWHON with this offense.

Joe Hess, Special Agent
Homeland Security Investigations

Sworn and subscribed to before me on this __8__ day of May, 2026, at Jacksonville, Florida.

MONTE C. RICHARDSON
United States Magistrate Judge

7